**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **MARK LYNN CLAYBROOK,** | ) |
| Petitioner, | ) |
| v. | ) Case No. 02-CV-0724-CVE-FHM |
| **OKLAHOMA DEPARTMENT OF CORRECTIONS,** | ) |
| Respondent. | ) |

## OPINION AND ORDER

Before the Court for consideration is Petitioner's 28 U.S.C. § 2254 petition for a writ of habeas corpus (Dkt. # 1). When the petition was filed, Petitioner was represented by attorney Gloyd McCoy. Respondent filed a response (Dkt. # 3) and provided the state court records necessary for adjudication of Petitioner's claims. Petitioner has not filed a reply to Respondent's response. By Order filed August 2, 2004 (Dkt. # 14), attorney McCoy was allowed to withdraw from representing Petitioner in this matter. On March 23, 2006, Petitioner filed an "entry of appearance pro se/motion to amend habeas action" (Dkt. # 16). He also provided his proposed amended petition along with his motion to amend. For the reasons discussed below, the Court finds the petition shall be denied. In addition, Petitioner's "motion to amend habeas action" shall be denied.

### *BACKGROUND*

During the early morning hours of March 22, 1998, Petitioner Mark Claybrook and Tonia Renee Thompson were alone in Petitioner's recording studio working on song lyrics. Both were musicians who had worked together professionally during the previous eleven (11) years. Petitioner and Ms. Thompson had both been drinking alcohol during the course of the evening. Between 3:00 and 4:00 a.m., Ms. Thompson told Petitioner she was getting sleepy. Petitioner told Ms. Thompson

he had "no doze" to give her and handed her two (2) pills. Ms. Thompson took the pills, became very groggy, and eventually blacked out. Ms. Thompson woke up between 5:30 and 6:00 a.m. that same morning in her own apartment with Petitioner tapping her on the face. Her bra was undone, her blazer and shoes were off, and her socks were on backwards. When she asked what had happened, Petitioner told her that they had had sex. According to Ms. Thompson, Petitioner grabbed the back of her neck, stuck his tongue in her mouth and said, "What does that taste like to you?" Petitioner also asked how he would be able to know Ms. Thompson had not shaved her pubic area "in a while" unless they had had sex as he claimed. After Petitioner left her apartment, Ms. Thompson slept until about noon. When she woke up, she called her mother for advice and eventually went to Hillcrest Hospital for a rape examination. A urine sample provided by Ms. Thompson tested positive for the presence of metabolites of the drug Rohypnol.

Based on evidence obtained as a result of the rape examination, interviews of Petitioner, and interviews of Ms. Thompson, Petitioner was charged with Rape in the Second Degree (Count 1), two (2) counts of Sexual Battery (Counts 2 and 3), and Rape by Instrumentation (Count 4), in Tulsa County District Court, Case No. CF-1998-2363. Petitioner was tried by a jury and acquitted of Count 1, but found guilty of Counts 2, 3, and 4. On July 20, 2000, the trial court overruled Petitioner's motion for new trial and sentenced Petitioner, in accordance with the jury's recommendation, to five (5) years imprisonment on each of Counts 2 and 3, and fifteen (15) years imprisonment on Count 4, with the sentences ordered to run consecutively. The Court also imposed a fine of $10,000 on each count of conviction. Petitioner was represented at trial by attorneys Scott Troy and Laurie Hastings.

Petitioner appealed his convictions and sentences to the Oklahoma Court of Criminal Appeals ("OCCA"). On appeal, Petitioner was represented by attorney Robert Nigh, Jr. He raised five (5) propositions of error as follows:

> Proposition 1: The State's evidence disproved the intent element of Count 2, Sexual Battery.
>
> Proposition 2: Count 3 of the Information was duplicitous and Mr. Claybrook was denied a unanimous verdict because the charge set forth separate methods of committing the offense.
>
> Proposition 3: Variance between the allegations in Count 4 of the Information and the proof at trial denied Mr. Claybrook due process of law.
>
> Proposition 4: The evidence was insufficient to support the conviction on Count 4.
>
>> A. There was insufficient evidence of an anesthetic agent.
>> B. There was insufficient evidence of penetration.
>
> Proposition 5: The State's closing argument denied Mr. Claybrook a fair trial.

(Dkt. # 3, Ex. 1). In an unpublished summary opinion, filed May 11, 2001, in Case No. F-2000-1014, the OCCA determined that none of Petitioner's claims was meritorious and affirmed the Judgment and Sentence of the trial court. (Dkt. # 3, Ex. 3). Petitioner indicates the OCCA denied his petition for rehearing on June 25, 2001. See Dkt. # 1. Petitioner did not file a petition for writ of *certiorari* in the United States Supreme Court and did not seek post-conviction relief in the state courts prior to filing his original habeas corpus petition.

Petitioner, represented by attorney Gloyd McCoy, filed the instant habeas corpus action on September 19, 2002 (Dkt. # 1). In his petition, Petitioner raises the same five (5) propositions of error raised on direct appeal to the OCCA. See Dkt. # 1. In response to the petition, Respondent contends Petitioner is not entitled to habeas corpus relief and that the petition should be denied.

As a preliminary matter, the Court shall address Petitioner's "motion to amend habeas action" (Dkt. # 16), filed in this matter on March 23, 2006. Petitioner sent his proposed amended petition along with his motion. After reviewing the claims asserted in the proposed amended petition, the Court finds Petitioner seeks leave to amend his petition by adding two (2) new propositions of error as follows: ground 6, ineffective assistance of appellate counsel, and ground 7, the information or "indictment" was multiplicitous giving to the jury the idea that more than one crime had been committed violating Okla. Stat. tit. 21, § 11, double jeopardy.

Consideration of Petitioner's motion to amend petition is governed by Fed. R. Civ. P. 15(c) (providing conditions determining whether an amended pleading relates back to the date of the original pleading). See United States v. Espinoza-Saenz, 235 F.3d 501 (10th Cir. 2000). The Court finds that grounds 6 and 7 asserted in the proposed amended petition are entirely new claims and do not relate back to the original petition. See Woodward v. Williams, 263 F.3d 1135, 1142 (10th Cir. 2001) (citing Espinoza-Saenz, 235 F.3d at 505, for proposition that "an untimely amendment to a § 2255 motion which, by way of additional facts, clarifies or amplifies a claim or theory in the original motion may, in the District Court's discretion, relate back to the date of the original motion *if and only if* the original motion was timely filed and *the proposed amendment does not seek to add a new claim or to insert a new theory into the case*"); see also United States v. Duffus, 174 F.3d 333 (3d Cir. 1999).

Petitioner fails to recognize the ramifications of the one-year statute of limitations imposed on habeas corpus claims. See 28 U.S.C. § 2244(d) (as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA")). Pursuant to 28 U.S.C. § 2244(d)(1)(A), a habeas corpus petition must be filed within one year from "the date on which the judgment became final by the conclusion

of direct review or the expiration of the time for seeking such review." In this case, Petitioner timely filed his original petition.[1] However, his "motion to amend habeas action" was not filed until approximately 3 ½ years after filing the original petition, or well after expiration of the one-year limitations period. Since Petitioner's new claims do not relate back to the date of the original petition, the Court finds that, unless Petitioner is entitled to tolling of the limitations period, to allow the filing of the proposed amended petition adding new claims would frustrate the intent of Congress in enacting the statute of limitations provisions of the AEDPA.

The Court finds no statutory or equitable basis for tolling the limitations period in this case. First, the pendency of the instant federal case does not serve to toll federal limitations period under 28 U.S.C. § 2244(d)(2). Duncan v. Walker, 533 U.S. 167 (2001) (holding that a federal habeas petition is not an "application for State post-conviction or other collateral review" within the meaning of § 2244(d)(2)). Second, although the statute of limitations contained in § 2244(d) may be subject to equitable tolling where extraordinary circumstances beyond the prisoner's control prevent a petitioner from timely filing his petition, see Miller v. Marr, 141 F.3d 976, 978 (10th Cir. 1998), Petitioner is not entitled to equitable tolling in this case. Equitable tolling may be appropriate where a prisoner is actually innocent. Id. However, to be entitled to equitable tolling, a habeas petitioner asserting actual innocence must also demonstrate that he has pursued his federal claims

---

[1] In the original petition, Petitioner indicates that on June 25, 2001, after the OCCA entered its summary opinion affirming his conviction, his petition for rehearing was denied. Petitioner does not indicate he sought *certiorari* review in the United States Supreme Court. Therefore, upon entry of the OCCA's order denying the petition for rehearing, his conviction became final on September 23, 2001, after the 90 day time period for filing a petition for writ of *certiorari* in the United States Supreme Court had lapsed. See Locke v. Saffle, 237 F.3d 1269, 1273 (10th Cir. 2001). Petitioner did not seek post-conviction relief in the state courts prior to filing his federal petition. As a result, Petitioner had until September 23, 2002, to file a timely petition for writ of habeas corpus. The original petition (Dkt. # 1) was timely filed September 19, 2002, or four (4) days prior to the deadline.

diligently. Id. In his proposed amended petition, Petitioner does claim to be actually innocent. However, he never explains the basis for his claim and fails to cite any new evidence supporting a claim of actual innocence. Furthermore, Petitioner did not exercise diligence in pursuing the new claims identified in the proposed amended petition. State court records attached to the proposed amended petition reflect that Petitioner first began to exhaust state remedies by commencing post-conviction proceedings in the state district court on April 20, 2004, or more than 2 ½ years after his conviction became final by the conclusion of direct review, 28 U.S.C. § 2244(d)(1)(A), and more than 1½ years after expiration of the limitations period.[2] Petitioner offers no explanation for his delay in pursuing his additional constitutional claims. As a result, the Court finds no basis for equitably tolling the limitations period in this case. Therefore, the "motion to amend habeas action" shall be denied. The Court will consider only those claims asserted in the original petition.

## *ANALYSIS*

**A. Exhaustion/Evidentiary Hearing**

As a preliminary matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b) and (c). See Rose v. Lundy, 455 U.S. 509, 510 (1982). Respondent concedes and the Court agrees that the exhaustion requirement of 28 U.S.C. § 2254(b) is satisfied in this case. In addition, the Court finds that Petitioner is not entitled to an evidentiary hearing. See Michael Williams v. Taylor, 529 U.S. 420 (2000).

---

[2] A collateral petition filed in state court after the limitations period has expired no longer serves to toll the statute of limitations. See Fisher v. Gibson, 262 F.3d 1135, 1142-43 (10th Cir. 2001).

**B. Claims adjudicated by the OCCA**

The AEDPA amended the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions. Under the AEDPA, when a state court has adjudicated a claim a petitioner may obtain federal habeas relief only if the state decision "involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001). In this case, the OCCA adjudicated each of Petitioner's claims, as identified in the original petition, on direct appeal. Therefore, those claims shall be reviewed pursuant to § 2254(d).

### *1. Sufficiency of the evidence (Claims 1 and 4)*

As stated above, a writ of habeas corpus will not be issued on a claim adjudicated on the merits by a state court unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or was "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. at § 2254(d)(2). "[A] determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Tenth Circuit authority is divided as to "whether, under AEDPA, we review a sufficiency-of-the-evidence issue as a legal determination under 28 U.S.C. § 2254(d)(1) or a factual finding under § 2254(d)(2) and (e)(1)." Romano v. Gibson, 239 F.3d 1156, 1164 n. 2 (10th Cir. 2001). Under either standard, Petitioner's claim in this case fails.

7

In examining Petitioner's sufficiency of the evidence claim, the appropriate inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). In evaluating the evidence presented at trial, the Court does not weigh conflicting evidence or consider witness credibility. Wingfield v. Massie, 122 F.3d 1329, 1332 (10th Cir. 1997); Messer v. Roberts, 74 F.3d 1009, 1013 (10th Cir. 1996). Instead, the Court must view the evidence in the "light most favorable to the prosecution," Jackson, 443 U.S. at 319, and "accept the jury's resolution of the evidence as long as it is within the bounds of reason." Grubbs v. Hannigan, 982 F.2d 1483, 1487 (10th Cir. 1993). Under the AEDPA, the Court must decide whether the OCCA's decision that there was sufficient evidence to support a jury's finding of guilt was contrary to or an unreasonable application of Jackson. See 28 U.S.C. § 2254(d)(1); Spears v. Mullin, 343 F.3d 1215, 1238-39 (10th Cir. 2003).

### a. Claim 1

As his first proposition of error, Petitioner contends that the State presented insufficient evidence to support the intent element of Count 2, Sexual Battery. The actions giving rise to the charge of Sexual Battery in Count 2 occurred at the victim's apartment when Petitioner put his tongue in the victim's mouth after the sexual contact at the recording studio had already occurred. Plaintiff argues that if he took those actions with the intent "to bully and humiliate," such conduct would be offensive, but it would not support the intent element for a sexual battery charge. On direct appeal, the OCCA rejected this claim, citing Spuehler v. State, 709 P.2d 202 (Okla. Crim. App. 1985), and holding that "after reviewing the evidence in the light most favorable to the State, any rational trier

of fact could have found the essential elements of the crime charged beyond a reasonable doubt." (Dkt. # 3, Ex. 3 at 2).

Oklahoma law provides the substantive elements of Sexual Battery applicable to the sufficiency of the evidence standard. See Jackson, 443 U.S. at 324 n. 16. To sustain a conviction for Sexual Battery under Oklahoma law, the prosecution must prove: (1) intentionally; (2) touch, maul or feel; (3) the body or private parts; (4) of any person 16 years of age or older; (5) in lewd or lascivious manner; (6) without the consent of that person. See Okla. Stat. tit. 21, § 1123(B) (1991). The jury in this case was also instructed that "'lewd' and 'lascivious' have the same meaning and signify conduct which is lustful and which evinces an eagerness for sexual indulgence." See Dkt. # 3, Ex. 4, Jury Instruction No. 6.

In his petition, Petitioner alleges that the prosecution failed to prove the intent element necessary to support Sexual Battery as charged in Count 2. At Petitioner's trial, the victim testified that when she woke up at her apartment and asked Petitioner what was going on, he said they had had sex. See Dkt. # 3, Tr. Trans., dated March 15, 2000, at 175. She also testified that while at her apartment, he grabbed hold of the back of her neck, stuck his tongue in her mouth and said, "What does that taste like to you?" See id. at 175-76. The Court disagrees with Petitioner's assertion that the evidence was insufficient to support the intent element for sexual battery. Instead, a rational juror could have reasonably found that Petitioner's actions were lustful and indicative of an eagerness for sexual indulgence. Upon review of the trial transcript, the Court agrees with the OCCA that the evidence presented at Petitioner's trial, viewed in the light most favorable to the prosecution, was sufficient to support his conviction of Sexual Battery as charged in Count 2. The Court finds no room for reasonable debate as to whether the evidence at trial was sufficient for a rational juror to be

convinced of that fact beyond a reasonable doubt. The Court concludes that Petitioner has failed to satisfy the § 2254(d) standard and his request for habeas corpus relief based on a challenge to the sufficiency of the evidence for the conviction of Sexual Battery as charged in Count 2 shall be denied.

### b. Claim 4

As his fourth proposition of error, Petitioner asserts that his conviction on Count 4, rape by instrumentation, is constitutionally infirm because insufficient evidence was presented to indicate that Rohypnol is an anesthetic agent and that penetration occurred. The OCCA rejected this claim on direct appeal, again citing Spuehler, 709 P.2d 202 (Okla. Crim. App. 1985), and finding that "there was sufficient evidence present to show that the drug Rohypnol is an anesthetic agent, and we find that there was sufficient evidence of penetration to support the Rape by Instrumentation conviction." (Dkt. # 3, Ex. 3 at 2-3).

Under Oklahoma law, Rape by Instrumentation occurs when "any inanimate object or any part of the human body, not amounting to sexual intercourse is used in the carnal knowledge of another person without his or her consent and penetration of the anus or vagina occurs to that person." Okla. Stat. tit. 21, § 1111.1. Consistent with the statutory language, Petitioner's jury was instructed that the State had to prove the following elements before Petitioner could be convicted of Rape by Instrumentation in the second degree: (1) penetration of the vagina, (2) of any other person, (3) by a part of the human body other than the penis, (4) without her consent, (5) where the victim is intoxicated by a narcotic or anesthetic agent administered by or with the privity of the accused as a means of forcing the victim to submit. See Dkt. # 3, Ex. 6. The jury was further instructed that "[a]ny sexual penetration, however slight, is sufficient to complete the crime." See id.

Petitioner argues that the State presented insufficient evidence that Rohypnol is an anesthetic agent and that penetration occurred. At Petitioner's trial, the State's expert witness, Dr. Mahmoud ElSohly, testified that Rohypnol belongs to a general class of drugs called benzodiazepines and that those drugs are muscle relaxants, hypnotics, sleep inducers, and can also be used as for "preoperative anesthesia." See Dkt. # 3, Tr. Trans., dated March 15, 2000, at 105-06. The Sexual Assault Nurse Examiner testified that she observed an area of abrasion and small areas of bruising on the victim's hymenal tissue, and that those injuries were consistent with either consensual or nonconsensual sex. See id. at 38, 53. The Sex Crimes Unit detective, Anna Cowdrey, testified that Defendant admitted that his fingers may have penetrated her vagina. Id., Tr. Trans., dated March 16, 2000, at 50-51. Upon review of the trial transcript, the Court agrees with the OCCA that the evidence presented at Petitioner's trial, viewed in the light most favorable to the prosecution, was sufficient to support his conviction of Rape by Instrumentation as charged in Count 4. The Court finds no room for reasonable debate as to whether the evidence at trial was sufficient for a rational juror to be convinced of that fact beyond a reasonable doubt. The Court concludes that Petitioner has failed to satisfy the § 2254(d) standard and his request for habeas corpus relief based on a challenge to the sufficiency of the evidence for the conviction of Rape by Instrumentation as charged in Count 4 shall be denied.

### *2. Prosecutorial misconduct (Claim 5)*

As his fifth proposition of error, Petitioner argues that comments made by the prosecutor during closing argument denied him due process and a fair trial. Specifically, Petitioner argues that the prosecutor made comments "designed to inflame the jury and denied Mr. Claybrook due process." See Dkt. # 1 at 12. In support of his claim, he cites to "Tr. IV, 191, 195, 196, Tr. IV, 233, 34, 236,

237, 238, 241, 248, 251, 254, 263, 264." Id. On direct appeal, the OCCA rejected this claim, finding that:

> after reviewing all of the alleged prosecutorial misconduct, we find that where an objection to the alleged misconduct was sustained and the jury was admonished to disregard the argument, the admonition cured any error. *Welch v. State*, 2000 OK CR 8, ¶ 26, 2 P.3d 356, 369-70. Where there was no objection lodged, we find that the alleged erroneous argument was either proper under the law or that the argument did not rise to the level of plain error. *Martinez v. State*, 1999 OK CR 33, ¶ 44-49, 984 P.2d 813, 825-26; *see Charm v. State*, 1996 OK CR 40, ¶ 62, 924 P.2d 754, 770.

(Dkt. # 3, Ex. 3 at 3).

Habeas corpus relief is available for prosecutorial misconduct only when the prosecution's conduct is so egregious in the context of the entire trial that it renders the trial fundamentally unfair. Donnelly v. DeChristoforo, 416 U.S. 637, 642-648 (1974); Cummings v. Evans, 161 F.3d 610, 618 (10th Cir.1998). Inquiry into the fundamental fairness of a trial requires examination of the entire proceedings. Donnelly, 416 U.S. at 643. "To view the prosecutor's [conduct] in context, we look first at the strength of the evidence against the defendant and decide whether the prosecutor's [conduct] plausibly could have tipped the scales in favor of the prosecution." Fero v. Kerby, 39 F.3d 1462, 1474 (10th Cir. 1994) (quotations omitted); see also Smallwood v. Gibson, 191 F.3d 1257, 1275-76 (10th Cir. 1999).

Petitioner has failed to provide any support for his habeas corpus claim of prosecutorial misconduct and has not provided any argument to convince the Court that the OCCA's adjudication of this claim entitles him to relief under § 2254(d). As a preliminary matter, Petitioner's citation to page numbers in the transcript is, in some cases, insufficient for identification of the allegedly improper comment(s). Furthermore, after reviewing the entire trial transcript, this Court finds no basis to conclude that the OCCA's rejection of this claim was an unreasonable application of

constitutional law. On at least five (5) of the pages cited by Petitioner, the trial court sustained Petitioner's objection to the prosecutor's comments and immediately admonished the jury to disregard the comments. Although the OCCA did not cite federal law in its ruling on this issue, the Tenth Circuit has recognized that the OCCA's longstanding position that a trial court's admonition usually cures any error is not in conflict with the standard established by federal law. Patton v. Miller, 425 F.3d 788, 800 (10th Cir. 2005). Federal law provides that there is a presumption "that a jury will follow an instruction to disregard inadmissible evidence unless there is an overwhelming probability that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be devastating to the defendant." See Greer v. Miller, 483 U.S. 756, 766 n. 8 (1987). Based upon the facts of this case, the Court agrees that the admonishments delivered to the jury after the alleged improper comments cured any error resulting from the comments. Furthermore, as to the remaining comments to which either there no objections or the objections were overruled, the Court finds no reasonable probability that in light of the evidence presented in this case the verdict would have been different without the prosecutor's comments. Therefore, the proceedings against Petitioner were not rendered fundamentally unfair by prosecutorial misconduct. Pursuant to § 2254(d), habeas corpus relief on this claim shall be denied.

### 3. Adequacy and validity of the Information (Claims 2 and 3)

As his second proposition of error, Petitioner alleges that Count 3 of the Information, charging sexual battery, was duplicitous, and that he was denied a unanimous verdict because the charge set forth separate methods of committing the offense and the State failed to provide proper notice of the charge. See Dkt. # 1 at 9. On direct appeal, Petitioner explained that as to Count 3, the Information charged that he committed the offense of sexual battery by licking the victim's breasts and her vagina.

He claimed that two separate acts were alleged within a single charge. The OCCA rejected this claim, citing Perez v. State, 614 P.2d 1112, 1114 (Okla. Crim. App. 1980), and finding that "the Information was not duplicitous and did not deny Appellant a unanimous verdict." See Dkt. # 3, Ex. 3 at 2.

As his third proposition of error, Petitioner offers another challenge to the adequacy of the Information by claiming that at trial the State offered proof that the crime of rape by instrumentation was accomplished through the use of a drug. In contrast, the Information charged that rape by instrumentation was accomplished with the use of bodily force and violence and by means of threats of immediate harm. Petitioner argues that the variance between the crime charged and the State's proof amounts to a violation of due process. On direct appeal, the OCCA rejected the claim, citing Conover v. State, 933 P.2d 904, 909 (Okla. Crim. App. 1997), and Parker v. State, 917 P.2d 980, 986 (Okla. Crim. App. 1996), and holding that the Information sufficiently apprised Petitioner of what he would have to defend against at trial. See Dkt. # 3, Ex. 3 at 2.

Petitioner's challenges to the adequacy of the Information under Oklahoma law raise questions of state law. Johnson v. Gibson, 169 F.3d 1239, 1252 (10th Cir. 1999). On federal habeas review, this Court is not empowered to correct all errors of state law. See id.; Jackson v. Shanks, 143 F.3d 1313, 1317 (10th Cir.1998). Habeas relief may be granted to a state prisoner "only if state court error deprived him of fundamental rights guaranteed by the Constitution of the United States." Jackson, 143 F.3d at 1317 (citation and internal quotation omitted). A charging instrument may violate the Sixth Amendment by failing to provide a defendant with adequate notice of the nature and cause of the accusations filed against him. See, e.g., Hunter v. State, 916 F.2d 595, 598 (10th Cir.1990). In this case, however, the language of the Information was adequate to provide Petitioner

14

with notice of the charges against him in satisfaction of due process requirements. Therefore, the defects alleged by Petitioner do not rise to the level of a federal constitutional violation. Petitioner is not entitled to habeas corpus relief based on his challenges to the sufficiency of the Information.

## *CONCLUSION*

After carefully reviewing the record in this case, the Court concludes that the Petitioner has not established that he is in custody in violation of the Constitution or laws or treaties of the United States. His petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. Petitioner's "motion to amend habeas action" (Dkt. # 16) is **denied**.
2. The petition for a writ of habeas corpus (Dkt. # 1) is **denied**.
3. A separate Judgment shall be entered in this case.

**IT IS SO ORDERED** this 30th day of May, 2006.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT